May it please the Court, Counsel. I'm Lisa Hay of the Federal Defender's Office, representing the defendant, Mr. Gong Kim. We're here to argue the appeal of an incorrect interpretation of Sentencing Guideline 2M5.2. Under our argument is that the plain meaning of the guideline, someone who exports gun parts should not be punished more harshly than someone who exports the full firearm. And I'd like to provide an example to illustrate the difference between our argument, our interpretation of the guideline, and the government's. You can imagine, for example, a person in the United States who decides to export a non-fully automatic rifle to someone in France. And he dismantles the gun into 12 pieces to ship it. Now, if he didn't have a license and he knew he needed one, he's committed a federal crime by doing this. The question is, how would he be sentenced? Under my interpretation of the guideline, this defendant would be sentenced at the guideline for lesser offenses, offense level 14, for two reasons. His offense involves non-fully automatic small arms, and the number of weapons did not exceed 10. That's the language of the guideline. Under the government's theory, this defendant would be sentenced at the higher offense level, offense level 26, which is significantly higher, along with other defendants who ship, for example, warships, tanks, ballistic missiles, chemical nuclear weapons. The government's arguing that higher offense levels should apply because the government argues that a shipment of gun parts is not a shipment of small arms, that it has to be the full gun, not the parts of the guns. That's their first argument under the first clause of the guideline. And second, they argue even if gun parts could be considered small arms, in this case, every part is considered a weapon. So since the defendant shipped 12 parts, he has shipped 12 weapons. And the guideline says you can't have more than 10 weapons. So the government argues that a defendant like this who ships 12 parts would not qualify for the lower offense level. Nothing in the history or the reasoning of the guideline would support that kind of interpretation. The counsel, if your theory were accepted, then a defendant could totally evade the enhancement by breaking down the weapons into parts and shipping them in parts, thereby shipping a whole weapon but not being held responsible for it. What's your response to that? It's true that the way the guideline is worded, the guideline uses the term weapon. And weapon is not a defined term the way firearm is. So a defendant, well, I should clarify that. The term dangerous weapon is defined under the guidelines. A dangerous weapon is an object that can be used to inflict deadly death or serious injury. So weapon is an object under the guidelines. And it's true that the commission could have made their, if their intent was to punish the shipment of parts, they should have used a different term than weapon. They should have said, for example, that a weapon or its parts. Or they should have used the term firearm because the term firearm does include parts. A firearm, for example, includes, under the definition in the guidelines, a firearm includes the frame or the receiver. So the commission could have avoided that very problem by saying, if the number of firearms exceeded 10, and that way if a defendant shipped 10 receivers and they could be made into 10 different firearms, then he wouldn't qualify for the lower offense level. Well, counsel, as we apply the guidelines, 2M5.2 says, exportation of arms, munitions, or equipment and so forth. And then it says base offense 26. But you go down to sub 2, 14 is an exception, right? That's correct. It's an exception. So you're trying to come within the exception. That's correct. All right. First of all, munitions from the munitions list specifically includes components, parts, accessories, and attachment and so forth. So you're already within the definition, as I understand it. Well, yes, Your Honor. My defendant would not have pled guilty if parts were not part of the munitions list, because my defendant shipped gun parts. And those are part of the munitions list, and we agree with that. Okay, but I don't see how you can have it both ways. The problem being that for you to come within the exception, you have to somehow indicate that the number did not exceed 10. And as I understand, the record shows there were 75 parts or parts for 75 weapons. So how do we get around that? Well, Your Honor, I think the question is which terms we're using. The exception is set out in order to allow offenses involving firearms, small firearms such as handguns, shotguns, rifles, to be sentenced at the lower offense level. That's what the purpose of the exception is, and the commission was explicit that they wanted to distinguish between the less serious and the more serious offenses. So if we think of the exception as a way to break out the less serious offenses, we have to look at the very terms of that. Now, there's no question that somebody who ships gun parts has violated the Arms Export Control Act. That's why my defendant pled guilty. But the question is which part of the guideline applies. I think that since he shipped parts of non-fully automatic small arms, he falls within the first prong of that exception. That exception says if the offense involves non-fully automatic small arms, and this Court's recent decision in Carper supports our interpretation. Carper was the case where both parties submitted letter briefs. In Carper, the Ninth Circuit tried to determine what the proper interpretation was of the first prong of this guideline exception. And the Court looked at the examples given of small arms in the guideline, and those are handguns, shotguns, and rifles. And the Court asked, well, is the offense that the defendant committed in Carper similar to that? In the case of Carper, this Court said no. The defendant in that case shipped night vision goggles. So that's not similar to handguns, shotguns, and rifles. My defendant, I believe, falls on the other side of that divide. My defendant shipped parts of firearms, shotguns, and rifles. And a shipment of parts of firearms, shotguns, and rifles is certainly similar. But wasn't the court in Carper interpreting the plain language? And by the plain language, they said night vision goggles don't fall within 2M5.2. Therefore, it applies. The enhanced level applies. Right. And the plain meaning is the plain meaning of the term small arms, an offense that involves small arms. And there's no question that my defendant was not shipping fully automatic weapons. He was not submitting anything other than handguns, rifles, shotguns. So under the plain meaning, my defendant shipped parts, which do qualify as an offense involving small arms. I think the question is, is a part of a firearm similar to a firearm? And the answer to that must be yes, that the defendant shipped parts, so he qualifies under the first section. Now, under the second prong, I think, is the more difficult one. The second prong says the number of weapons must not exceed 10. And if the commission wanted to avoid having somebody ship many, many parts, or if this court wanted to interpret the term weapon to avoid that, certainly the word weapon could be interpreted to be equivalent to firearm, for example. And the commission's comments in the amendments actually use the word weapon and firearm interchangeably under the very new amendments that became effective in 2011. If we were to interpret weapon to mean firearm, again, there's no evidence that my defendant shipped more than 10 firearms. That would require receivers, frames, or the actual firearm. What's happening here is somebody who ships trigger guards, a number of trigger guards would be held more culpable than someone who exported the actual weapon. And that's not what the commission intended, and it shouldn't be interpreted to mean that. I did want to reserve a few moments for rebuttal, but the last point I did want to make about bullets, the district court also ruled that because the defendant allegedly shipped ammunition, he also was disqualified. Under this court's decision in Amoline, there's no question that when a defendant objects to the pre-sentence report, the district court may not rely on facts in the pre-sentence report to support a sentence if no further evidence has been submitted. And in this case, the government did not submit the objected to email that supposedly shows that ammunition was shipped. Well, if we agree with you on your first argument, we don't have to reach that one, do we? No, Your Honor. If you agree with me on the first argument, then this case should be remanded for sentencing beginning at offense level 14. And I'd like to reserve the rest for rebuttal. You may do so, counsel. Thank you, Your Honor. We'll hear from the government. Thank you. Good morning. May it please the court. Leah Bolstad on behalf of the United States. In this case, the defendant engaged in the unlicensed exportation of over 75 shipments of gun parts and ammunition. This court should reject defendant's interpretation of 2M5.2 as a very strained reading of language that has plain meaning. There are three reasons. First of all, defendant's argument is internally inconsistent about plain language. Second, defendant's interpretation of guideline 2M5.2 is incompatible with this court's rationale as announced in the Helmy case. And third, there is simply no authority for the proposition advanced by the defendant that weapon parts should be treated differently than weapons. In fact, the great weight of authority from the 1st, 2nd, 3rd, 5th, and 11th circuits is to the contrary. Guideline 2M5.2 applies not only to weapons but to weapon components as well. I'd like to start with the plain language argument advanced by the defendant. As this court just pointed out, the defendant wants it both ways. At the first instance, she wants this court to agree that gun parts do not equal weapons. But at the same time, she wants this court, in order to meet the first clause of the exception, to agree that gun parts are the same as firearms, which I think everyone could agree in this courtroom that firearms are weapons. So to summarize, defendant's position on plain language is that parts are not weapons. Weapons include firearms, but gun parts are not weapons. It just doesn't make enough sense. It does not have the kind of plain meaning that is advanced by the government in this case. The government believes this court should adopt the 2nd circuit holding from the 2009 case of United States v. Ciro, which is directly on point. In Ciro, the 2nd circuit held, we agree with our sister circuits that a sensible reading of Guideline 2M5.2 is that it is sufficient if the item in question is a component of a weapon. That is exactly the case here. This defendant exported over 75 shipments of gun parts. It is sufficient that he did that to meet this default base offense level. He doesn't get the benefit of a narrow exception carved out in 2M5.2A2. If there are no further questions, I'll submit to the court. Thank you, counsel. Yes, there is a question. I'm sorry. Counsel, if we agree with you, we don't need to reach the issue regarding whether or not there was sufficient evidence establishing the possession of ammunition? That is correct, Your Honor. Resolution of the first issue alone is sufficient to affirm the district court. Thank you. Thank you, counsel. Ms. Hay, you have some reserve time. I'd like to address the court's decision in Helme because I believe that that decision is not one that can be applied to this case. As the court's aware, Helme interpreted an earlier version of the guideline that had significant differences. The earlier version of the guideline established a lower base offense level for most offenses and only mandated a higher offense level if the offense involved sophisticated weaponry. Given that structure, this court's reasoning was based on the idea that the shipment of components of sophisticated weaponry should be treated the same as someone who ships sophisticated weaponry. That is, someone who ships parts should be treated the same as someone who ships the entire sophisticated weaponry. And frankly, that makes sense because the sophisticated weaponry at issue in Helme was a Condor missile system, and it's very unlikely somebody would ship one entire missile system. The person might ship components of it. And so this court's decision in Helme was based on the idea that weaponry wouldn't be a single object. It's a components would be part of it, and someone who ships parts should be treated the same as someone who ships the total. The opposite is happening here because the guideline structure has been reversed. Now we have a higher base offense level generally, and we have an exception for someone who ships small arms. So what's happening now is if, under the government's interpretation, a person who ships gun parts would be treated more harshly than a person who ships firearms. And again, the example, someone who ships nine rifles, he qualifies for the lower base offense level. Someone who dismantles those nine rifles into two parts each for shipping has shipped 18 parts. Under the government's theory, those 18 parts are each weapons, and so therefore that defendant does not qualify. So the reasoning in Helme is attempting to treat two different sections equitably, and that's not what occurs when you apply it here. Thank you, counsel. The case just argued will be submitted for decision.
judges: Molloy, O'scannlain, Rawlinson